STATE HISTORICAL SOCIETY OF WISCONSIN, Appellant, vs.
FOSTER, Trustee, and another, Respondents.

*March 10—July 3, 1920.*

*Wills: Testamentary trust: Termination: Vesting of estate in re-
mainderman subject to annuities: Payment of annuity is
trustee duty: Costs in action to construe will.*

1. Under a will making specific bequests and giving the residue
   of the estate to trustees to manage and pay an annuity to
   testator's son for life, and if he marries an annuity to his
   wife, and if she survives him the two annuities to her till
   she dies or remarries, and in case the son dies leaving issue
   giving the residue to them, and directing that the trusts shall
   cease on such payments being made, but if the son die with-
   out issue giving the residue to a society, and directing that
   on the vesting in the society of the residue the trust shall
   cease,—the trust, in the latter contingency, ceases as to all
   the residue, and the estate vests, with right of possession, in
   the society, subject to payment of the widow's annuities, the
   direction for payment by the trustees being directory merely,
   the chief object being to place the *corpus* of the estate in the
   society on the happening of the contingency stated.
2. A society which is authorized by its charter to hold and manage
   property and to receive it by devise or gift can receive prop-
   erty by devise or gift subject to a reasonable lawful condi-
   tion, such as paying an annuity, even if the society is not
   authorized to act as trustee, payment not being the perform-
   ance of a trustee duty.
3. The society taking the estate subject to a charge of an annuity
   fulfils the mandate of the will that it use the income for pur-
   poses for which the society was organized when it uses all
   the income over and above the charge for such purposes.
4. The good faith and propriety of litigation for the construction
   of a will as to when a testamentary trust ceases not being
   questionable as to either party, each is entitled to payment
   of his taxable costs in the supreme court, to be paid out of
   the trust estate.

APPEAL from a judgment of the circuit court for Dane
county: JAMES WICKHAM, Judge. *Reversed.*

Action to construe a will. On the 21st day of August,
1903, George B. Burrows, a resident of Madison, Wis-

consin, executed his will, and on the 1st day of March, 1907, he added a codicil thereto, but the latter does not affect any question presented for determination. After making a number of specific bequests the will provides:

"*Ninth.* I give, bequeath, and devise to my executors and trustees hereinafter named, except my family lot in Forest Hill cemetery, near Madison, all the rest and residue of my estate, whether real or personal, wherever situated, including all my life insurance policies, and the sums to be paid thereon at my decease, by whatever company or companies such policies have been issued to me, but upon the following trusts:

"1. To pay from my personal estate my funeral expenses and all just debts.

"2. From the income arising from my said estate to pay to my son, George Thompson Burrows, the sum of one thousand dollars annually for the term of three years after my decease, to be paid in quarterly payments at the end of each and every three months, and after the termination of said three years to pay him the sum of fifteen hundred dollars annually during his life, to be paid in the manner above stated.

"3. That in case my said son marries, then in addition to the above I will and direct that my said executors and trustees pay to the wife of my said son the sum of five hundred dollars, to be paid her annually in quarterly instalments in the same manner they are directed to pay said annuity to my son. In the event of the wife of my said son surviving him, then the said annuity herein provided to be paid to my said son and to his wife shall all be paid to the said wife until her death or remarriage, when all annuities shall cease; provided, however, that if my said son and his wife shall, at the death of the survivor of them, leave a child or children, fruit of their marriage, then my said executors and trustees shall pay such sum or sums from my estate to support and maintain and educate such child or children as the proper court having jurisdiction of my estate shall deem necessary and expedient until such child or children shall respectively arrive at the age of twenty-one years."

Then follow seven subsections giving to his executors and trustees full power to manage the estate, compromise claims,

convert real estate into personal property and *vice versa,* continue his business office in Madison, plat property if it seems desirable, buy and sell real estate, stocks, or other property, and in general to manage the estate for its best interests as judged by them, including such interests as he may hold in partnership with others. The will then provides:

"*Tenth.* In case my son, George Thompson Burrows, shall leave surviving him lawful issue, then I give, bequeath, and devise to the child or children so surviving, all the rest and residue of my estate of every nature and kind wherever situated, not herein otherwise specifically bequeathed or devised, to be paid to said child, or if he leaves surviving him more than one child, then to said children, share alike, upon arriving at the age of twenty-one years, respectively, and upon the payment to said child or children of all the rest and residue of my estate, then the trusts herein created shall cease.

"*Eleventh.* In the contingency that my said son, George Thompson Burrows, at his death shall leave no child or children, born in lawful wedlock, surviving him, then in that case I give, bequeath, and devise all my said estate of whatever nature or kind or wherever situated, not hereinbefore otherwise specifically given, bequeathed, and devised, to the *State Historical Society of the State of Wisconsin,* upon this express condition: that the fund so received from my estate shall always be kept separate and distinct from the other funds of said society, and that no part of the principal thereof shall be diverted or used, and to be always known as the 'George B. Burrows Fund.'

"That the income shall be used for the promotion of the objects and purposes of said society as the board of curators of said society shall direct. That upon the taking effect and the vesting in said society of said rest and residue of my said estate in said society, then the trust herein created shall cease."

Fred M. Brown and Charles Pressentin of Madison and *Frank H. Foster* of Chicago were appointed executors and trustees and were empowered to act without giving a bond. Fred M. Brown declined to act and the other two managed

the estate until on or about December 1, 1916, when Charles Pressentin died, since which time *Mr. Foster* has managed the estate.

Testator's wife was dead at the time the will was made and he left no children surviving him except one son, George Thompson Burrows, then unmarried and about thirty-six years of age. The testator died February 25, 1909. March 5, 1909, the son married, and in October, 1916, he died leaving *Celeste K. Burrows,* his widow, then about thirty-eight years of age. He left no lawful issue of the marriage.

The inventory of the executors showed real estate of the value of $99,762.50 and personal property of the value of $118,296.11. The last report of the trustee states that the personal property amounts to $206,189, but the value of the real estate is not given. The court found the value of the whole estate to be about $380,000.

The plaintiff claims that upon the death of the son without lawful issue the estate vested in it, and the possession thereof should be turned over to it, charged, however, with the payment by it of the annuity of $2,000 to *Celeste K. Burrows* so long as she lives or remains a widow; or, in case it is not entitled to possession of the whole estate, that it is entitled to all thereof except so much as it is necessary to leave in the hands of the trustee to meet the annuity due the widow.

The defendant trustee contends that the whole estate must remain in his hands until the widow dies or remarries. The trial court held with the trustee, and the judgment construing the will states:

"That the true meaning and intent of the said will of George B. Burrows, deceased, and the codicil thereto, set forth in the complaint herein, is that the trust thereby granted shall not be terminated until all legacies and annuities provided for therein shall have been fully paid and discharged; and that the annuity of said *Celeste K. Burrows*

shall be paid by the trustee out of the income of the trust property."

From such portion of the judgment the plaintiff appealed.

For the appellant there were briefs by *Jones & Schubring* of Madison, and oral argument by *Burr W. Jones* and *E. J. B. Schubring.*

For the respondent *Foster* there was a brief by *Olin, Butler, Stebbins & Stroud* of Madison, and oral argument by *Harry L. Butler* and *Ray M. Stroud.*

The following opinion was filed April 6, 1920:

VINJE, J.   It is evident that the primary purpose of the testator was to pass his real estate to the lawful issue of his son, if any, to be paid such issue at the age of twenty-one years.   It is also evident that failing such issue the estate vested in the plaintiff.   Under the scheme of the testator the duration of the trust period was uncertain.   Except as to the annuity it was to be terminated by the occurrence of either of two events: first, by the arrival at majority of all the lawful issue of his son; second, by the death of his son without lawful issue.   The death of the son without marriage might occur at any time.   This would terminate the trust.   The son might marry and yet die without lawful issue.   This might occur at any time, and did in fact occur in October, 1916.   This terminated the trust by the terms of the will.   If his son left lawful issue, then the trust must be administered until such issue reached majority.   It will therefore be seen that in all probability the trust period would be one of considerable duration.   Hence the full power given the trustees to manage the estate and to change the form of assets.   But nowhere in the will do we find any provision for the continuance of the trust except as to the annuity beyond the contingencies mentioned therein, namely, death of the son without lawful issue, or arrival of lawful issue at majority.   These fix the limit of duration of the trust period as expressed in paragraphs 10 and 11.

The trial court found that the estate did not vest with the right of possession in the plaintiff until the termination of the annuity to the widow. This conclusion, we think, is not sustained by the language of the will. In case of failure of lawful issue to the son there is a present absolute unrestricted devise of the estate to plaintiff and a direction that "the trust herein created shall cease." It is true the annuity to the widow is a part of the trust, but it is quite evident that what the testator had in mind, when he said in the eleventh paragraph "then the trust created herein shall cease," referred to the trust to plaintiff and not to the annuity or to any other trust created by the will; none other but the annuity was left.

There would be some basis for construing the will to the effect that the annuity to the widow ceased upon the death of the son without lawful issue; but both plaintiff and trustee agree that such should not be the construction. In view of the specific language in paragraph 9 that the annuity to the wife shall be paid "to the said wife until her death or remarriage, when all annuities shall cease," we conclude that it was the intention of the testator that the widow should continue to receive the annuity after the estate vested in the plaintiff. The duration of the annuity period is definitely fixed in paragraph 9 to be coterminous with widowhood or death, and such specific direction must be deemed to control the general language in paragraph 11 to the effect that the "trust herein created shall cease." The result is that upon the death of the son without lawful issue the estate vested in the plaintiff subject to the payment of the annuity to the widow.

Counsel for the trustee argue that it was the meaning of subsection 3 in paragraph 9 that the annuity therein provided for to the wife should be paid her by the trustee. This, we think, is the natural construction of the language used. But such language cannot override the express provision that the estate shall vest in the plaintiff upon the death

of the son without lawful issue.    Had the testator intended
that the estate should be administered by the trustee until
the annuity to the widow terminated he would not have used
the language of a present devise and direction for a cessa-
tion of the trust that he did in paragraph 11.    When many
contingencies may occur, as there might under the terms of
this will, it is very difficult, if not impossible, to provide in
detail just what shall be done in an administrative way un-
der. each contingency as it may arise.    Therefore, constru-
ing the language used as a direction to the trustee to pay the
annuity to the widow, such provision in a case like this,
where the chief object of the trust is to place the *corpus* of
the estate in a specified devisee upon the happening of a
certain contingency, will be held to be directory merely and
to permit the estate to pass to the *cestui que trust* charged
with the payment thereof.    The payment of the annuity is
the main thing—who pays it out of the estate is a mere inci-
dent yielding readily to the main purposes of the testator as
disclosed by the whole scheme of the will.    The facts show
that the cost of managing the trust estate will be less in the
hands of the plaintiff than in those of the trustee, who, so
far as the evidence shows, has managed the estate both effi-
ciently and economically.    It is also apparent that testator
was a strong supporter of plaintiff's activities and that next
to his own blood it stood highest in his affections.    It is not
to be supposed that, had he contemplated the contingencies
that have happened, he intended to exclude plaintiff from the
possession of the estate for perhaps a quarter of a century
or more for the sole purpose of having the trustee and not
the plaintiff pay the annuity to the widow.    The latter says
she is perfectly willing to receive the annuity from plaintiff,
if her interests are properly secured, and the trustee frankly
states that the only interest he has in the matter is to see
the will of the testator carried out.    This is certainly a
laudable position for both to take, and it renders the labor of
the court pleasanter, since there is an elimination of per-

sonal motives.    In saying this the court is not unmindful of its duty to ascertain and carry out the intent of the testator as expressed in his will.    Such intent is paramount, and overrides the views of both trustee and beneficiaries.    But it is not amiss for the court to felicitate itself upon the rather unusual situation where the testator's evident intent coincides with that of all parties concerned in the litigation.

The trustee argues that plaintiff's charter does not authorize it to act as a trustee.    We shall not express any opinion upon this subject—but content ourselves with saying that, since it authorizes plaintiff to hold and manage property and to receive it by devise or gift, it certainly authorizes it to receive property by devise subject to reasonable lawful conditions, such as charged with the paying of an annuity during widowhood or life of a person.    The payment of such an annuity is not the performance of trustee duties. It is a specific charge upon property passing by devise and may be executed by any one competent to receive property by devise.

He also claims that, since the will provides that all the income from the estate after it passes to the plaintiff must be used for the purposes of its organization, the payment of this annuity to the widow would run counter to the will because devoted to other purposes than those embraced within plaintiff's charter.    It is a sufficient answer to this to say that all the income of the estate is devoted to the purposes specified in the will, namely, the payment to the widow of the annuity and the balance for the use of plaintiff.    When the plaintiff takes the estate subject to a charge created by the will it fulfils the mandate of the will when it uses all the income coming to it, over and above the charge, for the purpose specified.    The sum necessary to produce the annuity never creates income for plaintiff till the payment of the annuity ceases as prescribed by the will.

Since the estate is valued at upwards of $380,000 and the annuity is only $2,000, and since we have held that the

estate, subject to the payment of the annuity, passed to plaintiff upon the death of the son without lawful issue, the question raised as to whether the will contemplates that the annuity shall be paid out of anything but income becomes a moot question merely and need not be determined.

The good faith and propriety of this litigation cannot be questioned as to either of the parties. Each is therefore entitled to recover his taxable costs in this court to be paid out of the trust estate.

The part of the judgment of the trial court appealed from is reversed, and the cause remanded with directions to adjudge that it was the intent of the will that upon the death of the son, George Thompson Burrows, without lawful issue the estate vested in the plaintiff subject to the payment by it of the annuity to the widow, and that it is entitled to the possession, management, and use thereof; that if the plaintiff and the widow shall concur in a reasonable provision for securing the payment of the annuity to her, such provision shall be incorporated in the judgment. Should they fail to do so, the trial court will determine the conditions of security, and if necessary take further evidence for such purpose.

*By the Court.*—It is so ordered.

A motion for a rehearing was denied, with $25 costs, on July 3, 1920.